IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FLYNT JULES LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:02-cv-281-JPG |
| DONALD YOUNG, MIKE HICKS, ) | |
| MELINDA FIELDS, STEVEN CAGLE, and ) | |
| DONALD N. SNYDER ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the defendants, Donald Young, Mike Hicks, Melinda Fields, Steven Cagle, and Donald N. Snyder on January 29, 2007 (Doc. 144). For the reasons set forth below, it is **RECOMMENDED** that the Court adopt the following findings of fact and conclusions of law, and that the motion be **DENIED** in part and **GRANTED** in part:

**FINDINGS OF FACT**

Plaintiff filed his complaint in this action on April 1, 2002. The Court completed its threshold review pursuant to 28 U.S.C. § 1915A on October 30, 2002, (Doc. 5), finding that Plaintiff had stated an Eighth Amendment claim that Defendants exposed him to environmental tobacco smoke that had exacerbated his asthma and allergies.

Plaintiff Flynt Jules Lee ("Lee") was an inmate in the custody of the Illinois Department of Corrections from 1989 to 2002. He was housed in the Shawnee Correctional Center in 1995 and

1996, and again from 2001 to 2002 (Lee Affidavit, ¶ 1).  Lee states that he has been asthmatic all his life, and that his asthma worsened during the course of his incarceration in the Illinois Department of Corrections (Lee Affidavit, ¶ 3).  Lee alleges that exposure to environmental tobacco smoke ("ETS") at Shawnee Correctional Center damaged his health.  He alleges the ETS caused him to experience shortness of breath, watery eyes, sneezing, tightness in his chest, wheezing, coughing, and increased respiratory problems, and caused him to use an inhaler more frequently to control his asthma (Def. Exh. A, p. 3).

Medical records submitted by both Plaintiff and Defendants indicate that during his incarceration in the Illinois Department of Corrections, Lee received numerous medications for asthma, including Accolate, Azmacort, and Albuterol (Def. Exh. B; Pl. Exh. 5).  The medical records also indicate a history of complications due to his asthma prior to his second placement at Shawnee. In October 1998, Lee was hospitalized for "respiratory failure" (Pl. Exh. 3).  In September 2000 he was taken from Pontiac Correctional Center to an outside emergency room for breathing problems associated with his asthma (Pl. Exh. 3).

A health status report prepared upon Lee's arrival at Shawnee Correctional Center on January 29, 2001, indicates that medical personnel were aware of Lee's "acute" asthma, and of his participation in the asthma clinic.  It is also noted that Lee was reliant on both oral and inhaled daily medications to control his asthma (Def. Exh. B, p. 4).

Between March and June 2001, Lee submitted a series of grievances complaining that he was being exposed to ETS by his cellmate who continued to smoke in their "non-smoking" cell.  Lee also complained that he was being denied a smoke-free environment by being exposed to ETS from smoking inmates on his wing.  He requested placement in a non-smoking unit.  In August 2002, Lee

filed a grievance because the exhaust fans on his wing were not functioning properly. A grievance officer's report dated August 31, 2002, indicates that repairs were made to the exhaust fans (Pl. Exh. 6). On April 20, 2001, a grievance officer (name illegible) found merit to Lee's grievance that Lee was being subjected to ETS because Shawnee did not offer a non-smoking unit. The grievance officer's report indicated that Lee was already housed in a non-smoking cell, but was still being exposed to ETS from other inmates on the wing. The grievance officer felt "this grievance has merit and recommends approval with the stipulation that the Warden determine appropriate action." (Pl. Exh. 6.) On May 1, 2001, Warden Young checked the "I concur" box and signed the grievance, but wrote, cryptically, "I/M should be moved to non-smoking cell." (Pl. Exh. 6.) The grievance clearly stated that Lee was already assigned to a non-smoking cell (Pl. Exh. 6).

On May 4, 2001, Lee wrote a letter directly to Defendant Young pointing out that his recommendation was not responsive to Lee's grievance because Lee was already housed in a non-smoking cell. Lee further stated that despite his placement, he was still being exposed to ETS by a smoking cellmate and by other smoking inmates in his unit. Lee requested that Shawnee institute a non-smoking wing, or in the alternative, that Lee be transferred to another institution with a non-smoking wing (Pl. Exh. 7).

Lee complained repeatedly to medical personnel that being exposed to ETS aggravated his asthma (Pl. Exh. 10). On November 2, 2001, Lee complained that smoke caused him difficulty breathing (Id.). On February 12, 2002, while being seen for sinusitis, Lee complained to the nurse about "smoking inmates." (Id.) On March 2 and 8, 2002, he complained that the smoke in his cell was causing him to use his inhaler more (Id.). On May 27, 2002, Lee complained, while being seen for a cold, of cigarette smoke (Id.). On May 31, 2002, at another appointment for sinusitis, he

complained that the smoke made him sneeze and wheeze (Id.). On June 13 and 16, 2002, he complained about cigarette smoke (Id.). July 10, 2002, he complained that smoke was making his allergies worse (Id.). On July 16 and August 13, 2002, he complained about the smoke bothering him (Id.). On August 20, 2002, he complained that cigarette smoke aggravated his allergies (Id.). On October 17, 2002, at the asthma clinic, Lee stated that he uses his inhaler every day, and that second hand smoke is "bothering" his asthma (Id.). November 8, 2002 he complained about the smoke bothering him, and on November 2, 2002, he again complained that the smoke was aggravating his asthma and causing him to use his inhaler more often (Id.). On November 21, 2002, he complained about smoke in the housing unit bothering his asthma (Id.). On November 30, 2002, he complained that smoke in the cellhouse was bothering his sinuses (Id.). On December 4, 2002, on sick call, a nurse noted Lee's moderate to severe asthma; he also complained about the smoke bothering him (Pl. Exh. 10).

Defendants state that no Shawnee Correctional Center physician ever made a medical determination that Lee required a non-smoking cell due to his asthma, and that Lee did not have a serious medical condition as a result of ETS exposure (Vineyard Affidavit, ¶ 3(b)). Lee disputes these facts, offering evidence that in February 21, 2001, Dr. Alfonso David assigned him to the medical wing, unit 1-A, a non-smoking wing (Lee Affidavit, ¶ 6; Pl. Exh. 5). Lee also offers his medical records indicating that his "peak flow" respiratory examinations showed decreased lung capacity, and the dosages of his asthma medications were increased during his stay at Shawnee (Lee Affidavit, ¶ 5; Pl. Exh. 4).

The Shawnee Correctional Center had a smoking policy in place that prohibited smoking in designated non-smoking cells, including cells 12 through 24 of each housing unit, and gave housing

preference to those inmates requesting non-smoking cells (Pl. Exh. 1). Despite these policies, the Shawnee Commissary dispensed cigarettes and other tobacco products to inmates housed in the medical housing unit, 1-A, which was a designated non-smoking wing (Pl. Exh. 8).

Defendant Cagle issued a disciplinary ticket to Lee's cellmate for smoking in a non-smoking cell (Def. Exh. C). Defendants submit evidence that two other inmates at Shawnee received disciplinary tickets for possessing or using tobacco in segregation, a designated non-smoking area, in 2001 and 2002 (Def. Exh. D).

### CONCLUSIONS OF LAW

#### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).

Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach & Sons, Incorporated,105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d

1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836.  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994).  See also, Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

See also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

### Deliberate Indifference to a Serious Medical Need

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104, (1976).  In order to prevail on this claim, the Plaintiff must show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a

sufficiently culpable state of mind." Greeno v. Daley, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Foelker v. Outagamie County, 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted). The Seventh Circuit has held that, depending on its severity, asthma may pose a serious medical need. See Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005) (citing Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001)).

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind in endangering his health with environmental tobacco smoke. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. Duckworth, 780 F.2d at 653; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. Greeno, 414 F.3d at 653. In the Seventh Circuit's view, the holding of Estelle encompasses a claim that through deliberate indifference a prisoner was exposed to levels of environmental tobacco smoke "which aggravated his chronic asthma, thereby endangering his existing health." Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001). Furthermore, "[p]risoners allergic to the components of tobacco smoke, or who can attribute their serious medical conditions to smoke, are entitled appropriate medical treatment, which may include removal from places where

smoke hovers." Steading v. Thompson, 941 F.2d 498, 500 (7th Cir. 2001). "A prison is not required to provide a completely smoke-free environment, except for prisoners who have asthma or some other serious respiratory condition that even a low level of ambient smoke would aggravate." Powers v. Snyder, 484 F.3d 929, 932 (7th Cir. 2007) (citing Alvarado v. Litscher, 267 F.3d 648, 653 (7th Cir.2001); Talal v. White, 403 F.3d 423, 427 (6th Cir.2005); Weaver v. Clarke, 45 F.3d 1253, 1256 (8th Cir.1995); Hunt v. Reynolds, 974 F.2d 734, 736 (6th Cir.1992)).

*Serious Medical Need*

As to the objective, or serious medical need prong of the inquiry, Defendants argue that Lee did not suffer from serious medical problems as a result of his exposure to ETS at Shawnee. They cite Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999), for the proposition that "discomfort from the aggravation of asthma is not constitutionally actionable." (Doc. 144, p. 3). Lee has presented ample evidence that he suffered serious health problems related to his asthma and his exposure to ETS to establish a disputed material fact on this point. Among other things, Lee was seen repeatedly in the medical unit for breathing problems and allergies, and he complained regularly of second-hand smoke aggravating his breathing and causing him to use his inhaler more frequently. Additionally, the medical records submitted by Defendants themselves show that Lee's medications were increased during his stay at Shawnee. Even without these factual disputes, the Defendants would not be entitled to judgment as a matter of law on this prong of the legal inquiry because of the Seventh Circuit's specific holding that depending on its severity, asthma can pose a serious medical need, see Board, 394 F.3d at 484, and further that a prisoner states an Eighth Amendment claim of deliberate indifference where his exposure to levels of ETS that aggravate his chronic asthma creates a danger to the prisoner's existing health, see Alvarado, 267 F.3d at 651. The

medical records before the Court classify Lee's asthma as "acute" and "severe." Based on these cases, the Court finds that Lee's statement of his serious medical need is sufficient to survive summary judgment; Defendants are not entitled to judgment as a matter of law on this question.

*Deliberate Indifference*

As to the second prong of the inquiry, Defendants argue that they were not deliberately indifferent to Lee's medical needs because they were not aware of his serious medical need. In support, they specifically state that because no doctor had ever diagnosed Lee as needing a special housing assignment to avoid ETS, Defendants could not have known of his medical need or whether or not he was exposed to a substantial risk or serious harm. Defendants further argue that they took steps to stop inmates from smoking in non-smoking areas.

Lee offers evidence to counter these arguments, however, and to establish the existence of a genuine issue of material fact regarding whether Defendants acted with deliberate indifference to Lee's serious medical need. Lee offers a memorandum from Dr. Alfonso David assigning Lee to Unit 1A, a non-smoking wing at Shawnee. Lee also submits a number of grievances filed regarding his exposure to ETS, one of which was deemed to have merit by Defendant Young. In spite of that, Lee was never moved to a smoke-free environment. A reasonable juror could determine that these grievances alerted Defendants to Lee's serious medical need, and could therefore determine that Defendants acted with deliberate indifference in not ensuring that Lee was housed in a non-smoking environment. It is not for this court, but the trier of fact, to decide whether the evidence offered is sufficient to show that Defendants acted with deliberate indifference, that is whether Lee has demonstrate that the Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. Greeno,

414 F.3d at 653.

Accordingly, the Court **RECOMMENDS** that summary judgment be denied on the question whether Defendants violated Lee's Eighth Amendment right to be free from cruel and unusual punishment by acting with deliberate indifference to his serious medical need.

<u>Defendant Snyder</u>

Defendants argue that Defendant Snyder, the former Director of the Illinois Department of Corrections, never personally handled Lee's grievances, and therefore he cannot be held liable under section 1983. The undisputed facts indicate that Lee used only the institutional grievance system to inform Defendant Snyder of his complaints, that Defendant Snyder did not personally handle inmate grievances, but that they were "routed directly" to the Administrative Review Board, and that Defendant Snyder was not aware, did not personally see, nor was he consulted regarding grievances relating to Lee's ETS exposure (Def. Exh. E).

In order to succeed in his individual capacity claims against Snyder, pursuant to 42 U.S.C. §1983, Lee must show that Snyder was personally involved in the Constitutional deprivation. <u>Palmer v. Marion County</u>, 327 F.3d 588, 593-4 (7th Cir. 2003); <u>Kelly v. Municipal Courts of Marion County, Ind.</u>, 97 F.3d 902, 909 (7th Cir. 1996). "Although direct participation is not necessary, there must at least be a showing that the [][individual] acquiesced in some demonstrable way in the alleged constitutional violation." <u>Palmer</u>, 327 F.3d at 594 (citations omitted). An official is personally responsible under §1983 "if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." <u>Rascon v. Hardiman</u>, 803 F.2d 269, 274 (7th Cir. 1986). In <u>Gentry v. Duckworth</u>, 65 F.3d 555 (7th Cir. 1995), the Seventh Circuit Court of Appeals stated: "That is, he 'must know about the conduct and facilitate it, approve it, condone it, or turn a

blind eye" . . . . In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for §1983 recovery." Id. at 561 (citing Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988) and Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)). The Court went on to explain:

> However, we do not read Gentry as establishing an ironclad rule that any prisoner communication to a prison official anywhere in the corrections hierarchy constitutes adequate notice to the official of a violation of the Eighth Amendment. The plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to "an excessive risk to inmate health or safety," Farmer [v. Brennan], 511 U.S. at [837-838] []. Once the official knows of that risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.

Vance v. Peters, 97 F.3d 987, 993 (7th Cir. 1996).

In this case, Lee does not dispute that Defendant Snyder neither personally read the grievances submitted by Lee, nor assessed them in order to determine whether Lee ought to be granted some type of relief. Rather, the grievances were directly routed to the Administrative Review Board. Snyder had no knowledge of the contents of the grievances, nor did he direct how they were to be handled. Lee has cited to no controlling authority which would require a finding that Snyder, based on the facts of this case, was personally involved in the decision to deny his grievances (and hence was liable for any Constitutional violation). As there is no personal involvement, Defendant Snyder cannot be held liable under §1983. Thus, the Court **RECOMMENDS** that Summary Judgment be **GRANTED** in favor of Defendant Snyder and that he be **DISMISSED** from the action.

### Qualified Immunity

The Defendants' argue that they are entitled to qualified immunity. In so determining, the

Court must consider two questions: 1. "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and, if the answer is yes, 2. was "the right clearly established?" Saucier v. Katz, 533 U.S. 194, 201 (2001); See also Green v. Butler, 420 F.3d 689, 700-701 (7th Cir. 2005). With respect to the first question, the inquiry is specific to the circumstances of the case: "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; Kiddy-Brown v. Blagojevich, 408 F.3d 346, 352 (2005) ("[T]he case law must be 'clearly established' at the time of the alleged violation, so that a reasonable public official would have known that his conduct was unlawful."); Spiegla v. Hull, 371 F.3d 928, 940 (7th Cir. 2004).

As this matter is now before the Court on a motion for summary judgment, the issue of whether the Defendants are entitled to qualified immunity can be determined on the undisputed facts before the Court. To the extent that there are disputed facts, those will be considered in a light most favorable to the Lee. See generally, Board, 394 F.3d at 476. As shown above, there are disputed questions of fact remaining regarding whether Defendants' alleged conduct violated Lee's constitutional rights. Accordingly, summary judgment would be inappropriate at this time based upon Defendants' qualified immunity argument. Spiegla, 371 F.3d at 940 (stating that "before determining whether a right was clearly established, courts must first determine whether, taking the facts in the light most favorable to the plaintiff, the official violated a constitutional right").

Thus, it is **RECOMMENDED** that summary judgment be **DENIED** on this point.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary

Judgment filed by the Defendants, Donald Young, Mike Hicks, Melinda Fields, Steven Cagle, and Donald N. Snyder on January 29, 2007, be **DENIED** in part and **GRANTED** in part (Doc. 144), and that the Court adopt the foregoing findings of fact and conclusions of law.  Specifically, it is **RECOMMENDED** that Summary Judgment be **GRANTED** in favor of Defendant Donald N. Snyder and that he be **DISMISSED** from the action.  In all other respects, it is **RECOMMENDED** that Summary Judgment be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 10, 2007**

                                                      s/ *Donald G. Wilkerson*
                                                      **DONALD G. WILKERSON**
                                                     **United States Magistrate Judge**